## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

LINDA CASEY,               )
                                     )
            PLAINTIFF,       )
                                     )
vs.                      )    CASE NO. 06-CV-116-FHM
                                   )
MICHAEL J. ASTRUE,      )
Commissioner of the       )
Social Security Administration,[1]  )
                                   )
           DEFENDANT.     )

## ORDER

Plaintiff, Linda Casey, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[2] In accordance with 28 U.S.C. § 636(c)(1) & (3) the parties have consented to proceed before a United States Magistrate Judge.

The role of the Court in reviewing the decision of the Commissioner under 42 U.S.C. §405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. *Winfrey v. Chater*, 92

---

[1] On February 1, 2007, Michael J. Astrue was confirmed as Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for Jo Anne B. Barnhart the former Commissioner, as defendant in this case. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Plaintiff's August 26, 2002 applications for disability insurance and Supplemental Security Income benefits were denied initially and upon reconsideration. A hearing before an Administrative Law Judge (ALJ) was held January 13, 2004, after which the ALJ issued his decision denying benefits on January 21, 2004. The Appeals Council remanded that decision on September 24, 2004, for the purpose of *inter alia,* reevaluation of the treating physician's opinion. [R. 403-404]. The ALJ held a supplemental hearing on March 30, 2005. By decision dated April 12, 2005, the ALJ entered the findings which are the subject of this appeal. The Appeals Council denied review of the ALJ's decision on December 20, 2005. The action of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

F.3d 1017 (10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1994).  Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Doyal v. Barnhart*, 331 F.3d 758 (10th Cir. 2003). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005).  Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

Plaintiff was born March 10, 1962, and was 43 years old when the ALJ entered his second denial decision. [R. 23, 484, 536].  She claims to have been unable to work since July 2001 due to severe depression. [R. 487, 538].  The ALJ determined that Plaintiff has a severe impairment consisting of major depressive disorder. [R. 23].  He found Plaintiff's impairment causes moderate nonexertional limitations on her abilities to (1) complete a normal workday and workweek without interruptions from psychologically based symptoms and (2) work in coordination with or in proximity to others without being distracted by them. [R. 26].  The ALJ found Plaintiff is able to perform her past relevant work as a deli clerk, pharmacy technician and insurance agent with this residual functional capacity (RFC). [R.26].  He also found, alternatively, that there is other work in the local and national economy that Plaintiff can perform with her RFC. [R. 27].  The ALJ concluded, therefore, that Plaintiff is not disabled as defined by the Social Security Act. [R. 25].  The case was thus decided at both step four and step five of the five-step evaluative sequence for determining whether a claimant is

2

disabled.  *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

Plaintiff asserts the ALJ committed reversible error by failing: 1)  to fully develop the record; 2) to properly consider the medical source opinions; and 3) to properly consider Plaintiff's credibility. [Plaintiff's Brief, p. 3].  For the following reasons, the Court finds this case must be reversed and remanded.

### Medical Record

Plaintiff has a long history of depression relating to a history of sexual abuse during childhood. [R. 178, 310, 360, 361].  Plaintiff was treated with medication and for years she was able to maintain employment. [R. 200, 222].  However, her condition deteriorated in 1998 after Plaintiff was robbed at gunpoint and, in a separate incident, was raped. [R. 213, 367, 531, 546].  Plaintiff was hospitalized at Laureate Psychiatric Clinic and Hospital from April 14, 1999 to April 19, 1999 for marked depression, suicidal thoughts and substance abuse. [R. 176-187, 532].  Her assigned GAF score upon admission was 25.[3] [R. 180].  When released, her GAF was assessed at 55. [R. 177]. Plaintiff commenced treatment on an outpatient basis at Associated Centers for

---

[3]   The global assessment of functioning (GAF) score, sometimes called LOF (level of functioning) is a subjective determination based on a scale of 100 to 1 of "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) [DSM-IV-TR] at 32. A GAF score of 21 to 30 indicates: "Behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends); 41-50: "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g.,no friends, unable to keep a job); 51-60: "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers). *Id.* [at 34]

Therapy (ACT) on November 27, 2000. [R. 312].[4]  Initial intake assessments indicated major depressive disorder (MDD) with notes to "rule out" post traumatic syndrome disorder (PTSD) bipolar affective disorder (BPAD) and borderline personality disorder (PD). [R. 308, 310, 312].  Her treatment consisted of medication with individual and group therapy through June 5, 2001, during which time she worked on a part time basis as a deli cook. [R. 287-312, 486].  Plaintiff claims inability to work commencing July 2001. [R. 486, 538].

Treatment records reflect that Plaintiff attended monthly therapy sessions routinely from August 2001 through January 2003 at ACT. [R. 236-312].  She was seen regularly by staff doctors, Dr. Baumgardner, Dr. McCormick and Dr. Jenkins, for evaluation and medication adjustment. [R. 236, 238, 245, 249, 253, 254, 256, 257, 266-273, 280, 301, 308, 309, 336-339].  Although she was noted to be cooperative, she was usually described as severely depressed, withdrawn, isolates, had hypersomnia, lacks motivation, had flat affect, unkept appearance and was poorly groomed. *Id.*  Her diagnosis was major depressive disorder (MDD) and her GAF/LOF was rated below 50. [R. 252, 264].

On April 3, 2003, Plaintiff was given a psychosocial evaluation by Dr. Allison at Family & Children's Health Care Center (F&CS) and diagnosed with major depressive disorder with a GAF score of 44. [R. 351-364].  She received counseling services and medication at F&CS through the date of the last medical report found in the record, March 4, 2005. [R. 340-364, 416-459].  In addition to Dr. Allison, other doctors who

---

[4]  The records indicate Plaintiff went to Southern California for a period of time prior to this date during which she obtained medication for depression from Family & Children's Services. [R. 310, 312].

examined Plaintiff and prescribed medication at F&CS were Dr. Drummond, Dr. Lindley and Dr. Werlla as well as Dr. Baumgardner, who had also treated her at ACT. [R. 416, 421-428, 437, 438, 445].  Dr. Drummand noted on an undated list of treating physicians that Plaintiff has major depressive disorder "that significantly impacts her ability to motivate herself and attend to a daily routine.  She has been on multiple meds and at this point is considered treatment resistant." [R. 416].

A Medical Source Opinion of Ability to Do Work-Related Activities (Mental) (Mental RFC) form was signed by Dr. Werlla on December 16, 2004. [R. 418-420].  On that form, Dr. Werlla indicated Plaintiff had: "moderate" limitations in the ability to remember locations and work-like procedures and ability to accept instructions and criticism from supervisors; and "marked" limitations in the ability to understand and remember simple instructions, to maintain attention and concentration for extended periods in order to perform simple tasks and to work close to others without being distracted.  She checked "extreme" limitations on ability to understand and remember detailed instructions, to maintain attention and concentration for extended periods in order to perform detailed tasks, to adhere to a schedule and maintain regular attendance and to handle normal work stress. *Id.*

The record contains a report by Larry Vaught, Ph.D., regarding his examination of Plaintiff on behalf of the Social Security Administration on October 21, 2003. [R. 367-370].  Dr. Vaught diagnosed Major Depression, Recurrent Moderate, Without Psychotic Features and Anxiety Disorder, NOS. [R. 369].  A Mental RFC form accompanies Dr. Vaught's report. [R. 365-366]. Dr. Vaught indicated no limitations in understanding, remembering and carrying out short simple instructions, in understanding, remembering

and carrying out detailed instructions and in making judgments on simple work-related decisions.  Dr. Vaught wrote: "She was able to recall 7 digits forward and 5 digits backward.  She remembered 4 words after serial and recalled 3/4 after 20 minutes." [R. 365]. Dr. Vaught checked "moderate" limitations on Plaintiff's ability to interact appropriately with the public, supervisors and co-workers and in responding appropriately to work pressures in a usual work setting and wrote: "She present[s] as apathetic, lethargic, with flattened affect.  There is a documented history of depressive disorder." [R. 366].

After the Appeals Council remanded the case to the ALJ to reconsider the medical evidence, in particular the opinion of Plaintiff's treating physician, the ALJ scheduled a second hearing. [R. 403-405].  At that hearing, John Hickman, Ph.D., a clinical psychologist, was called to testify regarding the severity of Plaintiff's mental impairment based upon his review of the medical records. [R. 407-409, 518-536].  Dr. Hickman also provided a Mental RFC form [R. 460-463] and a Psychiatric Review Technique form [R. 464-477].[5]    Dr. Hickman assessed "moderate" limitations in Plaintiff's ability to maintain attention and concentration for extended periods, to work in coordination with or proximity to others without being distracted by them, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. [R. 462].  Under the "B" Criteria of the Listings on the PRT form,

_____

[5]   20 C.F.R. §1520a(d); *See* Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50,746; 50, 757 (Aug. 12, 2000).  The degree of functional loss resulting from the impairment must be rated in four areas: (1) activities of daily living, (2) social functioning, (3) concentration, persistence or pace; and (4) deterioration or decompensation in work or work-like settings. 20 C.F.R. §1520a(b)(3)

Dr. Hickman checked mild restrictions of activities of daily living and difficulties in maintaining concentration, persistence or pace. [R. 474].  He checked "moderate" difficulties in maintaining social functioning and one or two episodes of decompensation, each of extended duration. *Id.*

## ALJ's Decision

The ALJ concluded that Plaintiff's depression would significantly affect her ability to engage in work related activities.  He adopted Dr. Hickman's PRT findings for his RFC determination and ultimately concluded Plaintiff is not disabled. [R. 25].

Even though the ALJ had acknowledged at the hearing that Dr. Werlla was Plaintiff's treating psychiatrist, in his written decision he concluded her opinion was not entitled to controlling weight. [R. 557].  The ALJ gave two reasons for this determination, neither of which is substantiated by the record.

His first reason for not giving Dr. Werlla's opinion controlling weight was that:

> the opinion is the only record in the file by Dr. Werla (sic).
> This indicates a very limited association with the claimant
> and calls into question the validity of the "extreme" and
> "marked" limitations Dr. Werla gave the claimant.

[R. 26].  Review of the record indicates that statement is not accurate.  Dr. Werlla's signature is found on an F&CS treatment record dated December 23, 2004, when she examined Plaintiff and, after consulting with Plaintiff's therapist, adjusted Plaintiff's medications. [R. 424].  More importantly, Dr. Werlla is member of a group of physicians at F&CS and is listed as a prescribing physician on Plaintiff's medication record. [R. 416, 421].  It is obvious that Dr. Werlla had access to her colleagues' notes as well as Plaintiff's individual and group counselors.  Under 20 C.F.R. § 404.1502 and 416.902,

7

a treating source is a physician who the claimant sees "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical condition(s)." *See also, Kay v. Barnhart,* 148 Fed.Appx. 711, 713 (10th Cir.2005) (unpublished) (noting that member of medical professionals group is entitled to treating physician deference).   Clearly, Dr. Werlla qualified as one of Plaintiff's treating physicians.   The ALJ was therefore required to give Dr. Werlla's opinion regarding Plaintiff's mental limitations controlling weight unless it was not well-supported by medically acceptable clinical and laboratory diagnostic techniques or inconsistent with the other substantial evidence in the case record. SSR 96-2p, at *2; see also 20 C.F.R. § 404.1527(d)(2).

As his second reason, the ALJ found Dr. Werlla's opinion conflicted with the "no more than 'moderate' limitations" given by 'other evaluators'." [R. 26].   The only other evaluator whose opinion was referred to in this segment of the ALJ's decision, however, was Dr. Hickman.   The Court notes that Dr. Hickman based his opinion solely upon his review of the medical records, without even the benefit of having observed Plaintiff during her testimony because he was the first witness questioned at the hearing and was released immediately afterward.[6]   [R. 518-536].   The ALJ did not adequately explain how he determined that the opinion of the non-examining consultative psychologist who testified at the hearing was entitled to more weight than the opinion of Plaintiff's treating psychiatrist.

---

[6]  There was a short exchange between Dr. Hickman and Plaintiff when his testimony was interrupted in order to clarify Plaintiff's substance abuse history. [R. 531-534].

The ALJ also did not mention the moderate limitations Dr. Vaught determined Plaintiff had in responding appropriately to work pressures in a usual work setting. [R. 366]. He apparently rejected Dr. Vaught's findings in favor of Dr. Hickman's findings. The ALJ did not explain his rationale for concluding that the opinion of a non-examining psychologist was entitled to more weight than the opinion of the psychologist who examined Plaintiff.

It is well established that the opinions of physicians who have seen a claimant over a period of time for purposes of treatment are given more weight over the views of consulting physicians or those who only review the medical records and never examine the claimant. *Williams,* 844 F.2d at 757; *see also* 20 C.F.R. §§ 404.1527(d)(1), (2) and 416.927(d)(1), (2); *see also* Social Security Ruling (SSR) 96-6p, 1996 WL 374180, at *2. The treating physician's opinion is given particular weight because of his or her "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. " *Doyal v. Barnhart,* 331 F.3d 758, 762 (10th Cir.2003) (quoting 20 C.F.R. §§ 416.927(d)(2)). The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. 20 C.F.R. §§§§ 404.1527(d)(1), (2) and 416.927(1), (2); SSR 96-6p, at *2.

Nothing in the treatment record contradicts Dr. Werlla's opinion of Plaintiff's nonexertional limitations. The only evidence in the record that conflicts with Dr. Vaught's findings regarding Plaintiff's ability to respond appropriately to work pressures is the opinion of her treating psychiatrist that Plaintiff's limitations in that area are

9

extreme rather than moderate. [R. 366, 418].  Dr. Hickman cited no clinical or laboratory

diagnostic data he relied upon in concluding that Plaintiff's "motivational problems" were

separate from or not a result of her psychiatric problem. [R. 523-527].[7]

Thus, the ALJ did not articulate good cause for disregarding and rejecting the

opinion of Plaintiff's psychiatrist.   The ALJ erred in rejecting the treating-physician

opinion of Dr. Werlla and the examining psychologist's findings in favor of the opinion

of a non-examining, consulting psychologist absent a legally sufficient explanation for

doing so.

### Conclusion

The Court concludes the ALJ's determination that Plaintiff is not disabled is not

supported by the record.  The Court is generally reluctant to invoke its discretionary

authority to remand a case for benefits.  However, in light of the overwhelming record

support for Plaintiff's claim of disabling major depressive disorder and the controlling

opinion of Dr. Werlla that Plaintiff has marked and extreme limitations that meet the

criteria for Listing 12.04, *Affective Disorders*,  20 C.F.R. Pt. 404, Subpt. P, App. 1,  an

immediate award of benefits is appropriate in this case. *Ragland v. Shalala*, 992 F.2d

1056, 1060 (10th Cir. 1993); *Frey v. Bowen*, 816 F.2d 508, 518 (10th Cir. 1987) (It is

---

[7]  Plaintiff's argument that the ALJ should have ordered a consultative examination to follow up on Dr. Hickman's opinion that Plaintiff may have another psychiatric disorder which causes her lack of motivation is well taken.  Because the ALJ relied upon Dr. Hickman's opinion in determining Plaintiff is not disabled due to her major depressive disorder and because it was Dr. Hickman who suggested Plaintiff may be impaired from another disorder, the ALJ was required to ensure the record was fully developed consistent with this issue. *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993)); see also 20 C.F.R. §§ 404.944, 416.1444 (requiring ALJ to look fully into issues); Social Security Ruling 96-7p, 1996 WL 374186, at *2 n. 3 (requiring ALJ to develop "evidence regarding the possibility of a medically determinable mental impairment when the record contains information to suggest that such an impairment exists").

within the court's discretion to remand either for further administrative proceedings or for an immediate award of benefits).  Further, additional fact finding would serve no useful purpose in this case.  The Vocational Expert (VE) testified at the hearing that if either Dr. Werlla's or Dr. Vaught's assessed limitations were applied in a hypothetical work setting, Plaintiff would be unable to engage in sustained competitive work.  [R. 557-561].  *See Williams v. Bowen*, 844 F.2d 748 (10th Cir. 1988) citing *Dollar v. Bowen*, 821 F.2d 530 (10th Cir. 1987) (Where the record fully supports a determination that the claimant is disabled as a matter of law and is entitled to benefits, reversal for the immediate award of benefits is appropriate).

Accordingly, the Court exercises its discretion pursuant to 42 U.S.C. § 405(g) and REVERSES and REMANDS the case to the Commissioner with directions to award disability benefits in accordance with Plaintiff's August 26, 2002 applications.

SO ORDERED this 19th day of March, 2007.

FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE

11